

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB 25 2002
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BOYD BUSHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:01-CV-0498-A |
| | § | |
| LOCKHEED MARTIN CORPORATION, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the renewed motion of defendant, Lockheed Martin Corporation, for judgment on the pleadings and to dismiss or for summary judgment, and motion to strike. The court, having considered the motion, the response of plaintiff, Boyd Bushman, the reply, the record, the summary judgment evidence, and applicable authorities, finds that the motion for summary judgment should be granted.

I.

### Procedural Background

On April 27, 2001, plaintiff filed his original petition in the 342nd Judicial District Court of Tarrant County, Texas. The action was brought before this court by notice of removal filed June 15, 2001. By order signed October 16, 2001, the court dismissed plaintiff's claims against defendant Joe W. Stout ("Stout") with prejudice and ordered that Lockheed Martin



Corporation was the sole defendant in this action. By memorandum opinion and order signed the same date, the court determined that an earlier motion for judgment on the pleadings by defendant should be granted, at least in part, but that plaintiff must be given an opportunity to replead before any claims could be dismissed. Accordingly, plaintiff filed, on October 19, 2001, his first amended complaint.

## II.

### Plaintiff's Claims

In his first amended complaint, plaintiff realleges, with additional detail, the facts set forth in his original petition:

Plaintiff began his career in the aviation industry in 1963 when he was employed as a scientist by defendant's predecessor, General Dynamics. In 1986, plaintiff and General Dynamics entered into "invention agreements," comprised of an invention agreement, an agreement relating to atomic energy work, and an agreement regarding property rights in inventions under contracts with the National Aeronautics and Space Administration. The invention agreement controls the property rights of the parties regarding plaintiff's "inventions and improvements made, developed, perfected, devised, or conceived by [plaintiff] . . . relating to the business, developments, products, or activities of [defendant] or its subsidiaries . . . ."

Defendant acquired General Dynamics in March of 1993 and thereafter plaintiff worked for defendant. Defendant assumed all obligations of General Dynamics under the agreement. The agreement requires that all patents issued to plaintiff be assigned to defendant, and requires defendant to pay certain cash awards to plaintiff in addition to his salary. Defendant agreed to pay plaintiff $300 for each patent application submitted by plaintiff; to pay plaintiff $150 for each patent obtained; and

> to pay [plaintiff] for each of [plaintiff's] inventions additional compensation consisting of a percentage of any income derived by [defendant] from any sale of rights in such invention or part thereof, or from any royalties which [defendant] may collect from licenses to others, for the use of such inventions, except the sale or license of any invention, or part thereof, for use outside the United States of America, on a sliding scale, as follows:
>
> Of the first $1,000 or part thereof . . . 30%
>
> Of the next $1,000 or part thereof . . . 25%
>
> Of any further sums in excess of $2,000 . . . 20%

The payment obligations are not contingent on plaintiff's continued employment.

Plaintiff obtained a security clearance from the United States Department of Defense ("DOD") so that he could fully discharge his job duties. After obtaining the security clearance, defendant gave plaintiff access to sensitive and classified government documents and he began developing technologies with the goal of securing patents. Plaintiff was

the named inventor for more than twenty-six patents. Since the inception of the invention agreement, defendant has made some, but very few, payments to plaintiff. Defendant has incorporated plaintiff's technologies into its products and sold those products for billions of dollars.

Additionally, defendant has either licensed or sold plaintiff's inventions to others. Certain inventions developed by plaintiff were specifically funded by the DOD and upon funding the DOD had the exclusive rights to those inventions.

In 1994, defendant learned that a combination of inventions was being directly infringed by a competitor. Defendant secured a release from security rules placed on the inventions by the DOD so that it would be able to pursue patent infringement claims. Defendant hired an attorney to pursue the matter and calculated its damages to be as high as $100,000,000. Defendant briefed plaintiff about the potential litigation, but did not go forward with the proposed infringement suit. Plaintiff "believes that [defendant] settled or entered into a license with the infringers," but plaintiff "has not been paid any money if that is the case." Pl.'s First Am. Compl. at 8.

In early summer 1998, Stout, head of defendant's public relations department, contacted plaintiff to advise him that he would be giving an interview to the editor of *Janes Defence Weekly* ("*Janes*"), a military armament and weapon news reporting

company located in England. Defendant was anxious for plaintiff to give the interview and he did so. Plaintiff gave a second interview to *Janes* in April 1999. In allowing plaintiff to participate in the interviews, defendant failed to follow procedures that had been established in DOD security guidelines. In December 1999, after receiving a draft of a *Janes* article concerning plaintiff's interview, the DOD informed plaintiff that it was restricting his special access to classified and other government information. Defendant refused to support plaintiff in his attempts to regain his special access clearance. Instead, defendant made plaintiff the "fall guy" so that defendant would not come under scrutiny and punishment by the DOD. Pl.'s First Am. Compl. at 13. After being told that he would be laid off as of May 1, 2000, plaintiff agreed to take early retirement. Despite diligent efforts, plaintiff has been unable to secure other employment.

Plaintiff now asserts two causes of action: breach of contract (Count 1) and negligence (Count 2).

### III.

### Grounds of the Motion for Summary Judgment

Defendant urges three grounds in support of its motion for summary judgment. First, plaintiff cannot establish any breach of contract by defendant. Second, plaintiff cannot establish that defendant owed him a legal duty to support his negligence

claim. And, third, defendant cannot establish any damages proximately resulting from defendant's alleged negligence. Because the first and second grounds are dispositive, the court need not discuss the third.

IV.

## Applicable Summary Judgment Principles

Because the court is considering matters outside the pleadings, the provisions of Rule 56 of the Federal Rules of Civil Procedure Apply.

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts.

6

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597.

V.

Undisputed Evidence

The following is an overview of evidence pertinent to the motion for summary judgment that is undisputed in the summary judgment record:

In 1986, plaintiff entered into the "invention agreements" described earlier.

Between 1994 and 1997, plaintiff became convinced that competitors of defendant were infringing patents for which plaintiff was named as inventor. Defendant conducted an infringement investigation in 1998 and took no further action with regard to potential infringement claims. Defendant did not grant any licenses to any alleged infringer or receive any payments in exchange for declining to pursue infringement claims.

Defendant has not granted licenses on any of the patents on which plaintiff is named as an inventor. None of the inventions reported by plaintiff was conceived or reduced to practice under a federally funded program. And, the United States government neither owns, nor has any license to use, any of the inventions developed by plaintiff.

In order to perform his work for defendant, plaintiff was required to have a security clearance that permitted him access to classified information. Security clearances are issued to individual employees by the government. Cleared employees are responsible for safeguarding classified information entrusted to them. Plaintiff signed a classified information non-disclosure agreement which provided in pertinent part:

> I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States government to receive

>       it; or (b) I have been given prior written notice of
>       authorization from the United States government
>       Department or Agency (hereinafter Department or Agency)
>       responsible for the classification of the information
>       or last granting me a security clearance that such
>       disclosure is permitted.

Def.'s App. at 27. Plaintiff understood that it was his individual obligation not to disclose classified information. Neither government regulations nor defendant's policy required defendant to monitor interviews given by employees or to obtain pre-clearance for such interviews.

In 1998, Stout called plaintiff and told plaintiff to meet with a reporter from *Janes* and submit to an interview. Plaintiff understood that he was to answer questions and "talk up" the technologies that he had been marketing in the public sector. Pl.'s Aff. at 5. Plaintiff had been encouraged by Larry McQuien, an internal patent attorney, to continue his efforts to explore the sale of technologies to companies outside the government. Plaintiff had no concern that he would need to gain authorization to give the interview to *Janes*.

In April 1999, Stout again contacted plaintiff and directed him to submit to a second interview with *Janes*. Plaintiff was notified ahead of time of the subjects to be covered. He was concerned that one of the topics was the generation of inexpensive electricity that was not protected by patent. Plaintiff submitted to the interview with the understanding that the technologies would be protected with patent pending

9

designations prior to the publication of the proposed interview. By memorandum dated May 12, 1999, plaintiff reminded defendant of the need to patent the five technologies he had disclosed in his *Janes* interview. On May 19, 1999, plaintiff was advised that a new security document would be issued, possibly concerning some of the technologies he had discussed with *Janes*. In October 1999, plaintiff received a copy of the proposed *Janes* article. Based on the May 19, 1999, letter and subsequent security restrictions, plaintiff edited the article to remove any information that might be classified.

On October 28, 1999, the Air Force issued a notice of suspension of plaintiff from access to all special access programs based on his "failure to follow established security procedures resulting in the possible compromise of classified national security information."[1] Pl.'s App. at 22. Plaintiff had to have access to the information related to special access programs in order to do his job. Defendant declined to assist plaintiff in regaining his special access clearance. Rather than be laid off or fired, plaintiff gave notice of retirement. Plaintiff has made diligent efforts to secure employment, but remains unemployed.

---

[1]The parties have assumed that the revocation of security clearance was related to plaintiff's interviews with *Janes*. The notice of suspension does not give a specific reason for the action.

VI.

Law Applied to the Facts

A.  Breach of Contract.

Under his breach of contract claim, plaintiff seeks to recover a percentage of the alleged multiple billions of dollars defendant has made by selling products incorporating plaintiff's inventions. He also seeks to recover a percentage of the payments made by the government to defendant to develop new products.[2]

---

[2] In his response to the summary judgment motion, plaintiff additionally urges that he is entitled to a percentage of whatever defendant would have recovered had it pursued competitors who infringed the patents developed by plaintiff and that defendant breached a fiduciary duty to him by failing to pursue such claims. Neither of these theories was pleaded by plaintiff in the amended complaint. Nor are facts pleaded that would support relief on these grounds. Thus, summary judgment is not thwarted by the raising of these allegations in response to the motion. See Peavy v. WFAA-TV, Inc., 221 F.3d 158, 167 (5th Cir. 2000) (the failure to categorize correctly the legal theory giving rise to a claim is not fatal if the complaint alleges facts upon which relief can be granted). The basis for plaintiff's complaint was not that defendant failed to pursue the infringers, but rather that defendant had secretly settled or entered into a license agreement with the infringers. But, even had these claims been properly pleaded, the summary judgment evidence does not raise any genuine fact issue that would entitle plaintiff to proceed with them. Rather, the invention agreements specifically provide:

> It is further understood and agreed that [defendant] may sell such invention or improvements, or license the manufacture thereof for such price or royalty as [defendant] in its sole judgment and discretion shall determine, or if [defendant] elects to do so, grant royalty-free licenses for the use of such invention, or waive future royalties for a definite or indefinite period of time on any license theretofore

11

Of the two requests for relief pleaded, plaintiff in his summary judgment affidavit disavows any intent to pursue the former, saying that he has "determined that there are numerous security concerns which would make the issues of proof too cumbersome" and that he has "agreed to dismiss my contract claim based on 'value added.'" Pl.'s Aff. at 2. Plaintiff's brief, on the other hand, devotes several pages to a discussion of his right to recover under such a theory. As defendant points out, plaintiff does not cite any authority to support the validity of such a theory. Nor has he raised a genuine fact issue as to the viability of such a theory.

As for the second theory of liability for breach of contract, that is, that plaintiff is entitled to a share of government development money, neither the facts nor the law support plaintiff. First, it once again appears that plaintiff is attempting by his summary judgment response to change the basis for his theory of recovery. Pl.'s Resp. at 12. Plaintiff admits that none of his inventions was conceived or reduced to

---

issued by [defendant] on a royalty basis, and that in any of such events, [plaintiff] shall have no claim or claims against [defendant], except to receive under the provisions of paragraph 2(d) hereof the percentages above set forth of such amounts as [defendant] shall collect through the sale of such inventions or improvements or the issuance of licenses to use the same.

Def.'s App. at 47, ¶ 4.

practice under a federally funded contract; thus, the government did not obtain any rights in the inventions under the Bayh-Dole Act, 35 U.S.C. §§ 202 to 212. Second, the summary judgment evidence establishes that no "[r]ights in [plaintiff's] inventions were sold to the DOD" and that the DOD did not "[become] the owner of the inventions through the development funding." Pl.'s First Am. Compl. at 15, ¶ 5.7. Thus, plaintiff cannot prevail on his breach of contract claims.

B.  Negligence.

Plaintiff's second cause of action is for negligence. In support, plaintiff alleges that defendant was required to follow DOD security guidelines designed to protect against the release of classified or otherwise sensitive information and that because it failed to do so, plaintiff was investigated by the DOD and his access to special projects taken away. Plaintiff lost his job as a consequence and has been unable to obtain other employment.

Plaintiff maintains that defendant breached two duties owed to him. First, "[defendant] had a general duty to [plaintiff] not to do anything that would interfere with his personal rights and privileges between [plaintiff] and the third-party DOD." Pl.'s First Am. Compl. at 16, ¶ 5.13. And, second, "[u]nder the circumstances, [defendant] had a further duty to speak to the DOD to clarify that it was [defendant's] fault that DOD security guidelines were not followed." Id. at 17, ¶ 5.16.

13

The three essential elements of negligence are (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from the breach. <u>El Chico Corp. v. Poole</u>, 732 S.W.2d 306, 311 (Tex. 1987). Defendant contends that plaintiff cannot establish the first and third elements of his negligence claim. As for the first element, defendant says that it cannot find any authority to support the contention that it owed any duty to plaintiff of the sort plaintiff describes. In response, plaintiff does not cite to any such authority. Rather, he simply argues that defendant "should have taken action to prevent the release of the information or should have obtained governmental approval of the release." Pl.'s Resp. at 18-19. The court cannot find legal authority to support this argument. And, even if such authority exists, plaintiff does not adduce any summary judgment evidence to raise a genuine fact issue as to his right to recover under it. Likewise, there is no support, factual or legal, to support the contention that defendant had a further duty to speak to the DOD to clarify that it was defendant's fault that security guidelines were not followed. The only summary judgment evidence on the issue is that plaintiff individually was responsible for obtaining necessary clearances. And, there is no evidence that defendant conducted any investigation in a negligent manner, Pl.'s Resp. at 19, or that defendant could have caused the

government to reverse its decision regarding plaintiff's security clearance.

In sum, there is no evidence that defendant did anything wrong in asking plaintiff to participate in the *Janes* interviews. And, plaintiff maintains that he did nothing wrong in giving the interviews.[3] That the government might have arbitrarily decided to revoke plaintiff's security clearance does not automatically give rise to liability on the part of defendant. Even if there were evidence that the government was justified in revoking the security clearance, there is nothing in the record to support the conclusion that defendant acted improperly.

VII.

ORDER

For the reasons discussed herein,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claims against defendant; and that such claims be, and are hereby, dismissed with prejudice.

SIGNED February 25, 2002.

JOHN McBRYDE
United States District Judge

---

[3] Plaintiff says that he never disclosed any classified material to any other person during his employment with defendant.